# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| XAVIER ADAMS, KATELYN CAMPBELL, LISA ROWDEN, RUBY SINREICH, MARK SFEIR,<br><br>        Plaintiffs,<br><br>v.<br><br>CITY OF GRAHAM, CLINT CROSS, *in his individual and official capacity*, TJ MOWBRAY, *in his individual and official capacity*, CHRISTIAN WILSON, *in his individual and official capacity,* JANE DOE #1, *in her individual and official capacity,* JEFFREY ELLIS, *in his individual and official capacity*, JOSH PAYNE, *in his individual and official capacity*, and TERRY S. JOHNSON*, in his official capacity as Sheriff of Alamance County,*<br><br>        Defendants. | **CIVIL ACTION**<br>**NO. 1:22-cv-906**<br>**VERIFIED COMPLAINT** |

## COMPLAINT

Plaintiffs Xavier Adams, Katelyn Campbell, Lisa Rowden, Ruby Sinreich, and Mark Sfeir (collectively, "Plaintiffs"), by and through undersigned counsel, hereby file this Complaint against the City of Graham; Clint Cross, in his individual capacity and in his official capacity as a police officer for the Graham Police Department; TJ Mowbray, in his individual capacity and in his official capacity as a police officer for the Alamance County Sheriff's Office; Christian Wilson, in his individual capacity and in his official capacity as a police officer for the Alamance County Sheriff's Office; Jane Doe #1, in her individual capacity and her official capacity as a police officer for the Graham Police Department; Jeffrey Ellis, in his individual capacity and in his official

1

capacity as a police officer for the Haw River Police Department; Josh Payne, in his individual capacity and in his official capacity as a police officer for the Graham Police Department; and Terry S. Johnson, in his official capacity as the Sheriff of Alamance County (collectively, "Defendants").

Plaintiffs allege that Defendants violated their First, Fourth, and Fourteenth Amendment rights. Defendants violated Plaintiffs' First Amendment speech and assembly rights when Defendants issued an unlawful command to disperse that prohibited Plaintiffs from protesting on the public sidewalk, a traditional public forum. Defendants violated Plaintiffs' Fourth Amendment rights to be free from unreasonable seizure by unlawfully arresting Plaintiffs for not complying with an unlawful order to disperse when Defendants had no probable cause to believe that disorderly conduct had occurred. Defendant Clint Cross violated Plaintiff Xavier Adams's Fourteenth Amendment right to Equal Protection under the law by arresting Plaintiff Xavier Adams, who was the only person of color among sixteen similarly situated individuals, all of whom were engaging in the same conduct.

## NATURE OF THE ACTION

1.     This action challenges Plaintiffs' unlawful arrests in violation of their First, Fourth, and Fourteenth Amendment rights.[1]

2.     At the time of Plaintiffs' unlawful arrests, Chapter 18, Art. VI, Sections 18-172 and 18-174–181 of the City of Graham, North Carolina's Code of Ordinances (the "Graham Ordinance"), an unconstitutional prior restraint and an unconstitutional, unreasonable content-based time, place, and manner restriction of speech in traditional public forums, was in effect in

---

[1] In the following paragraphs, references to the First Amendment and the Fourth Amendment include the First Amendment and Fourth Amendment as applied to the states through the Fourteenth Amendment.

2

violation of the First Amendment.[2]

3.     The Graham Ordinance required that any group of "two or more persons" gathering "for the purpose of protesting any matter or making known any position or thought of the group or of attracting attention thereto" and anyone at all "march[ing] . . . upon the public streets, sidewalks, parks, or other public places" acquire a permit from the Graham Police Department Chief at least 24 hours in advance.

4.     Additionally, the Graham Ordinance gave the Graham Police Department's Chief complete discretion to limit gatherings to no more than six individuals and to deny permit applications based on the Chief's judgment that the gathering might cause "a public disturbance."

5.     The Graham Ordinance also restricted the speech and assembly rights of minors unless the Chief provided discretionary permission.

6.     Failure to obtain the permit would result in the Graham Police Department deeming the group demonstration an unlawful assembly.

7.     On November 14, 2019, Plaintiffs attended a protest (the "Protest") held by Never Again Action, a coalition of Jewish individuals and their allies committed to mobilizing against the detention and deportation of immigrants in the United States. The purpose of the Protest was to oppose cooperation agreements between Immigration and Customs Enforcement and local law enforcement.

8.     Never Again Action did not obtain a permit for the Protest.

9.     Because Never Again Action did not obtain a permit, Defendants treated the Protest as unlawful.

10.    Defendants' treatment of the Protest as unlawful was unconstitutional because it

_____

[2] As explained in more detail in Section A of the Facts, this Ordinance has since been repealed.

enforced the unconstitutional Graham Ordinance.

11.     During the Protest, Defendants created barriers on all sides of the protestors, including Plaintiffs, preventing them from marching on the public sidewalk, which is a traditional public forum.

12.     Defendants issued several unlawful orders to disperse, one of which was issued at the outset of the Protest.

13.     For an order to disperse to be lawful, law enforcement must have a reasonable belief that three or more individuals are engaging in disorderly conduct. N.C. Gen. Stat. § 14-288.5.

14.     N.C. Gen. Stat. § 14-288.4 defines disorderly conduct as violent conduct or conduct creating an imminent threat of violence or the utterance of verbal threats or abusive language likely to provoke a violent retaliation and cause a breach of the peace.

15.     N.C. Gen. Stat. § 14-288.5(b) states that any person who "fails to comply with a *lawful* command to disperse is guilty of a Class 2 Misdemeanor." (emphasis added).

16.     Defendants did not observe three or more individuals engaging in violent conduct or conduct creating an imminent threat of violence.

17.     Defendants did not observe three or more individuals uttering verbal threats or abusive language likely to provoke a violent retaliation and cause a breach of the peace.

18.     Defendants arrested Plaintiffs for failing to comply with the unlawful order to disperse pursuant to N.C. Gen. Stat. § 14-288.5.

19.     Plaintiffs were arrested while engaging in First Amendment protected-activity.

20.     Plaintiffs had broken no laws prior to their arrest.

21.     Plaintiffs were arrested without probable cause in violation of their First and Fourth Amendment rights.

4

22.    Defendants' arrest of individuals engaged in First Amendment protected-activity while utilizing the sidewalk, a traditional public forum, was unconstitutional.

## JURISDICTION AND VENUE

23.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves violations of the First, Fourth, and Fourteenth Amendments of the United States Constitution; and pursuant to 28 U.S.C. § 1343(3) because this action seeks to redress the deprivation, under color of state law, of Plaintiffs' civil rights, and to secure equitable or other relief for the violation of those rights.

24.    This Court has jurisdiction to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, as well as Rule 57 of the Federal Rules of Civil Procedure.

25.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because all Defendants reside in the state of North Carolina and the events giving rise to the following claims occurred in Graham, North Carolina.

## JURY DEMAND

26.    Plaintiff hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PARTIES

### A.  PLAINTIFFS

27.    Plaintiff Xavier Adams is an adult Afro-Mexican resident of Durham, North Carolina, who, at all times relevant, was located in Graham, North Carolina, when this action arose. While located in Graham, North Carolina, Plaintiff Xavier Adams suffered damage from the violation of his First Amendment rights, racial discrimination, and his unlawful arrest.

28.    Plaintiff Katelyn Campbell is an adult white resident of Mebane, North Carolina,

5

who, at all times relevant, was located in Graham, North Carolina, when this action arose. While located in Graham, North Carolina, Plaintiff Katelyn Campbell suffered damage from the violation of her First Amendment rights and her unlawful arrest.

29. Plaintiff Lisa Rowden is an adult white resident of Mebane, North Carolina, who, at all times relevant, was located in Graham, North Carolina, when this action arose. While located in Graham, North Carolina, Plaintiff Lisa Rowden suffered damage from the violation of her First Amendment rights and her unlawful arrest.

30. Plaintiff Ruby Sinreich is an adult white resident of Durham, North Carolina, who, at all times relevant, was located in Graham, North Carolina, when this action arose. While located in Graham, North Carolina, Plaintiff Ruby Sinreich suffered damage from the violation of her First Amendment rights and her unlawful arrest.

31. Plaintiff Mark Sfeir is an adult white resident of Kannapolis, North Carolina, who, at all times relevant, was located in Graham, North Carolina, when this action arose. While located in Graham, North Carolina, Plaintiff Mark Sfeir suffered damage from the violation of his First Amendment rights and his unlawful arrest.

**B. DEFENDANTS**

32. Defendant Clint Cross ("Defendant Cross") is sued in his individual capacity and in his official capacity as a law enforcement officer employed with the Graham Police Department located in Graham, North Carolina. Upon information and belief, Defendant Cross is domiciled in North Carolina, and is subject to the personal jurisdiction of this Court. Defendant Cross was on duty as a law enforcement officer during the Protest and, acting under the color of law, deprived Plaintiff Mark Sfeir and Plaintiff Xavier Adams of their constitutional rights.

33. Defendant TJ Mowbray ("Defendant Mowbray") is sued in his individual capacity

and in his official capacity as a law enforcement officer employed with the Alamance County Sheriff's Office located in Graham, North Carolina. Upon information and belief, Defendant Mowbray is domiciled in North Carolina and is subject to the personal jurisdiction of this Court. Defendant Mowbray was on duty as a law enforcement officer during the Protest and, acting under the color of law, deprived Plaintiff Katelyn Campbell of her constitutional rights.

34.     Defendant Christian Wilson ("Defendant Wilson") is sued in his individual capacity and in his official capacity as a law enforcement officer employed with the Alamance County Sheriff's Office located in Graham, North Carolina. Upon information and belief, Defendant Wilson is domiciled in North Carolina, and is subject to the personal jurisdiction of this Court. Defendant Wilson was on duty as a law enforcement officer during the Protest and, acting under the color of law, deprived Plaintiff Lisa Rowden of her constitutional rights.

35.     Defendant Jane Doe #1 is sued in her individual capacity and in her official capacity as a law enforcement officer employed with the Graham Police Department located in Graham, North Carolina. Upon information and belief, Defendant Jane Doe #1 is domiciled in North Carolina, and is subject to the personal jurisdiction of this Court. Defendant Jane Doe #1 was on duty as a law enforcement officer during the Protest and, acting under the color of law, deprived Plaintiff Katelyn Campbell and Plaintiff Lisa Rowden of their constitutional rights.

36.     Defendant Jeffrey Ellis ("Defendant Ellis") is sued in his individual capacity as a law enforcement officer employed with the Haw River Police Department located in Haw River, North Carolina. Upon information and belief, Defendant Ellis is domiciled in North Carolina, and is subject to the personal jurisdiction of this Court. Defendant Ellis was on duty as a law enforcement officer during the Protest and, acting under the color of law, deprived Plaintiff Ruby Sinreich of her constitutional rights.

37.     Defendant Josh Payne ("Defendant Payne") is sued in his individual capacity and in his official capacity as a law enforcement officer employed, as a Sergeant, with the Graham Police Department located in Graham, North Carolina. Upon information and belief, Defendant Payne is domiciled in North Carolina and is subject to the personal jurisdiction of this Court. Defendant Payne was on duty as a law enforcement officer during the Protest and, acting under the color of law, deprived Plaintiff Mark Sfeir of his constitutional rights.

38.     Defendant Terry S. Johnson ("Defendant Johnson") is sued in his official capacity as the Sheriff of Alamance County, North Carolina. Upon information and belief, Defendant Johnson is domiciled in North Carolina and is subject to the personal jurisdiction of this Court. Defendant Johnson is the chief law enforcement officer of Alamance County and, as such, has authority to assign duties to sheriff's deputies and enforce local ordinances in effect throughout the county. Defendant Johnson, acting under the color of law, deprived Plaintiffs of their constitutional rights.

39.     The City of Graham is sued in its capacity as a municipality. The City of Graham enacted and enforced Chapter 18, Art. VI, Sections 18-172 and 18-174–181 of the City of Graham, North Carolina's Code of Ordinances.

## FACTS

**A.  LAW ENFORCEMENT'S REQUIREMENT THAT THE ORGANIZERS OF THE PROTEST SECURE A PERMIT FOR THE PROTEST WAS UNCONSTITUTIONAL.**

40.     Chapter 18, Art. VI, Sections 18-172 and 18-174–181 of the City of Graham's Code of Ordinances ("the Graham Ordinance") purported to require Never Again Action to secure a permit for the Protest.

41.     Graham City Code Sec. 18-175 provided: "No parade, picket line or group

8

demonstration is permitted on the sidewalks or streets of the city unless a permit therefor has been issued by the city; provided, however, that nothing in this section shall be construed to prevent the peaceful assembly of any group for orderly expression or communication between those assembled."

42.  Graham City Code Sec. 18-172 defined a "group demonstration" as "any assembly together or concert of action between two or more persons for the purpose of protesting any matter or making known any position or thought of the group or of attracting attention thereto."

43.  The Graham Ordinance defined parade as "any parade, march, ceremony, show, exhibition or procession of any kind in or upon the public streets, sidewalks, parks or other public places."

44.  It defined picket line as "any persons formed together for the purpose of making known any position or promotion of said persons or on behalf of any organization."

45.  Graham City Ordinance Sec. 18-178 provided for the application for and issuance of permits and stated: "The chief of police or, in his absence, the next highest ranking officer of the city police department is authorized to issue permits as required in this article, and in the issuance thereof shall:

> (1) Require a written application therefor to be filed 24 hours in advance of such parade, picket line or group demonstration on a form prescribed by said department, and shall require the application to be signed by the person filing such application and the applicant shall therein state the proposed site, time, purpose and size of such parade, picket line or group demonstration, and whether or not any minors below the age of 18 years shall participate.

> (2) Refuse to issue such permit when the activity or purpose stated in the application would violate any ordinance of the city or statute of the state, or when the activity or purpose would endanger the public health or safety, or hinder or prevent the orderly movement of pedestrian or vehicular traffic on the sidewalks or streets of the city.

> (3) Specify in the permit whether or not minors below the age of 18 years will be

9

permitted to participate. The chief of police or, in his absence, the next highest ranking police officer of the city on duty shall pass upon whether or not minors below the age of 18 years shall be permitted to participate in the parade, picket line or group demonstration, and shall base his determination upon whether or not the purpose, time or place of the participation will be detrimental to or endanger the health, welfare or safety of said minors.

46.    Graham City Ordinance Sec. 18-179 sets out the "prerequisites" for issuing permits and stated as follows: "The chief of police or other designated officer in considering the issuance of a permit shall, among other considerations provided, consider and find as a requisite for issuance that:

(1) The activity will not require excessive diversion of police from other necessary duties.

(2) The activity will not interfere with the right of property owners in the area to enjoy peaceful occupancy and use of their property.

(3) The activity can be conducted without unreasonable interference with normal vehicular or pedestrian traffic in the area, will not prevent normal police or fire protection to the public, and will not be likely to cause injury to persons or property or provoke disorderly conduct or create a public disturbance.

47. Graham City Ordinance Sec. 18-180 provided for the contents of the permit as follows:

(a) A permit under this article may set the starting time and duration of a parade, demonstration or picket line and may set the speed of its travel; the space between persons or vehicles; the portions or areas of the streets and sidewalks to be used; the length of the parade, group or line; and such other requirements as the chief of police or other designated officer may include in the permit for the control of free movement of traffic upon the streets and sidewalks, or for the health, safety and property rights of the participants and the general public. Failure to comply with such requirements, as set forth in the permit, shall be unlawful.

(b) The applicant for a permit shall specify and the permit shall designate the person in charge of the parade, group demonstration or picket line, and such person in charge shall accompany such parade, demonstration, or picket line and shall carry such permit with him at that time.

48.    Graham City Ordinance Sec. 18-181 restricted the number of participants as follows:

10

Any picket line or group demonstration which is located in any area subject to normally heavy pedestrian or vehicular traffic may be limited in the permit issued to a concentration of not more than six persons participating within any designated area of the street or sidewalk; provided that the officer issuing the permit may specify a larger number in the designated area where, in his judgment, conditions permit a higher concentration. The term "designated area" is defined as the entire width of said street or sidewalk "within a distance measured along its length for 100 feet."

49. Graham City Ordinance Sec. 18-177 required that the presence of minors be identified in the permit, and prohibited minors from participating in demonstrations unless the permit specifically allowed it. It provided: "In any parade, picket line or group demonstration, it shall be unlawful:

(1) For any minor below the age of 18 years to participate or be allowed to participate, and any person encouraging, leading or allowing such minor to so participate, unless a permit therefor has been issued, shall be guilty of a violation of this section.

(2) For any person to lead, guide, participate in or in any way support or encourage such parade, picket line or group demonstration when a minor below the age of 18 years is participating therein, unless a permit for such participation by such minor has been issued.

(3) For any parent to knowingly permit any minor child of such parent under 18 years of age to participate in such parade, picket line or group demonstration unless a permit for such participation by such minor has been issued.

(4) To cause, participate in, lead or encourage any parade, picket line or group demonstration to deviate in any manner from the authority therefor specified in the permit.

50. In July 2020, the National Association for the Advancement of Colored People ("NAACP") and various other individuals (collectively, the "TRO Plaintiffs") filed for a Temporary Restraining Order ("TRO") in the United States District Court for the Middle District of North Carolina seeking to prohibit Graham officials, including Defendant Johnson (collectively, the "TRO Defendants"), from enforcing the Graham Ordinance.

51. In seeking the TRO, the TRO Plaintiffs alleged that the Graham Ordinance was an

11

unconstitutional prior restraint on First Amendment rights to free speech and assembly, violated the First Amendment's prohibition against unreasonable and content-based time, place, and manner restrictions of speech in traditional public forums, and was void for vagueness under the Fourteenth Amendment's due process provision.

52.     On July 6, 2020, the District Court entered a Consent TRO restraining the TRO Defendants from enforcing the Graham Ordinance and scheduling a hearing for the TRO Plaintiff's Motion for a Preliminary Injunction for July 20, 2020.

53.     The Graham City Council repealed the Graham Ordinance on July 14, 2020, prior to the scheduled Preliminary Injunction hearing. **Exhibit A**.

54.     Despite the District Court's TRO and the eventual repeal of the unconstitutional Graham Ordinance, the Graham Ordinance was still in effect in November 2019 when this cause of action arose.

55.     During the Protest, law enforcement officers gave multiple warnings through a PA system advising protestors that they were breaking the law because, they contended, it was unlawful to hold a march without permits from the city.

**B. PLAINTIFFS ENGAGED IN FIRST AMENDMENT PROTECTED ACTIVITY AT A PEACEFUL AND LAWFUL PROTEST HELD IN GRAHAM, NORTH CAROLINA.**
**I.     THE NEVER AGAIN ACTION PROTEST**

56.     On November 14, 2019, Never Again Action held a Protest opposing the cooperation between Immigration and Customs Enforcement (ICE), Graham Police Department, and the Alamance County Sherriff's Office.

57.     The plan for the Protest was to have all protestors meet at the Center for Spiritual Living, located at the intersection of S. Maple Street and W. McAden Street, and to march to the Alamance County Detention Center, where Jewish protestors would lead a traditional Jewish

12

mourning service called a "shiva" for immigrants who had died in federal immigration custody.

58.     The protestors planned to march North on the public sidewalks down S. Maple Street until they reached W. Elm Street and then to march West on the public sidewalks along W. Elm Street until they reached the Alamance County Detention Center.

59.     After completing the shiva, the protestors planned to march on the public sidewalks back to the Center for Spiritual Living.

60.     As protestors began to approach the public sidewalks, the Alamance County Sheriff's Office, the Graham Police Department, and the Haw River Police Department (collectively, "Law Enforcement"), at the direction of Defendant Johnson, set up barriers that blocked all traffic from accessing S. Maple Street. *See* **Exhibit B; Exhibit C; Exhibit D; Exhibit E**.

61.     Shortly after the protestors, including Plaintiffs, began to march North down the sidewalk of S. Maple Street, Law Enforcement, including Defendants, blocked off both the street and sidewalks in front of the protestors. *See* **Exhibit D; Exhibit F; Exhibit G; Exhibit H**.

62.     Law Enforcement, including Defendants, then issued an order to disperse.

63.     Prior to issuing this order to disperse, Law Enforcement, including Defendants, had not observed three or more protestors engaging in violent conduct or conduct creating an imminent threat of violence or uttering verbal threats or abusive language likely to provoke a violent retaliation and cause a breach of the peace.

64.     The protestors, including Plaintiffs, then attempted to reroute by going South down the sidewalk of S. Maple Street back towards the Center for Spiritual Living.

65.     The protestors planned to instead march East on the sidewalks down W. McAden Street until they reached S. Main Street and then to continue marching North on the sidewalks

down S. Main Street until they reached W. Elm Street.

66. However, shortly after the protestors turned back to go South down S. Maple Street, they discovered Law Enforcement had blocked the street and sidewalks of W. Elm Street as well. *See* **Exhibit B; Exhibit I**.

67. Law Enforcement also created a barrier and prevented the protestors from going South down S. Maple Street. At each of these points, Law Enforcement blocked the public sidewalks. *See* **Exhibit C**.

68. At this point, the protestors were back at their original location in front of the Center for Spiritual Living.

69. Law Enforcement then began surrounding protestors, including Plaintiffs, on all sides and creating barriers using vehicles and by forming a line of Law Enforcement personnel.

70. Law Enforcement's barriers blocked significant portions of the sidewalk such that the remainder of the sidewalk was not large enough to accommodate all of the protestors. **Exhibit I.**

71. The Law Enforcement barriers also blocked traffic from accessing W. Elm Street and prevented any vehicles from accessing the area where the Protest was taking place. *See* **Exhibit B; Exhibit C; Exhibit D; Exhibit E**.

72. The protestors remained in the road and protested for approximately 20 minutes before Law Enforcement attempted to disperse the Protest.

73. After about 20 minutes of allowing the Protest to go on in the road, Law Enforcement then gave another command to disperse.

74. The Protest was at all times peaceful, and at no point in time was there any violent conduct or conduct creating an imminent threat of violence.

14

75. At no point in time did three or more protestors utter verbal threats or abusive language likely to provoke a violent retaliation or cause a breach of the peace.

76. Sometime after Law Enforcement gave a command to disperse, they began to use sound cannons and physically push protestors onto the private property of the Center for Spiritual Living.

77. The protestors intended to remain on the public sidewalk for the entirety of the Protest.

78. However, Law Enforcement blocked the use of the public sidewalks and then created barriers that forced the protestors into the road.

79. Law Enforcement then allowed the protestors to remain in the road for approximately 20 minutes.

80. Despite being in the road, the protestors did not block any traffic because, before the Protest even began, Law Enforcement set up barriers blocking the road and prohibited traffic from accessing the area where the protestors were located.

## II. PLAINTIFFS' PARTICIPATION IN THE PROTEST

### PLAINTIFF XAVIER ADAMS

81. On November 14, 2019, Plaintiff Xavier Adams ("Mr. Adams") traveled to Graham, North Carolina, to participate in the Protest. Mr. Adams arrived at the Center for Spiritual Living and, when the Protest began, marched with the other protestors down the sidewalk of S. Maple Street. Mr. Adams participated in the Protest as described in Section B-I of this Complaint.

82. After Law Enforcement surrounded the protestors with barriers, several protestors formed a line standing shoulder to shoulder approximately one to two feet in front of one of the Law Enforcement barriers.

15

83.     Mr. Adams was one of the protestors standing in this line. He was the only person of color in the line. There were approximately fifteen other individuals standing in line with Mr. Adams, all of whom were white.

84.     Mr. Adams held out his hands palms up in front of him so that it was clear to law enforcement that he had no weapons or violent intentions. **Exhibit J.**

85.     After several minutes of protestors, including Mr. Adams, singing and chanting, one officer pointed at Mr. Adams and stated "he needs to go."

86.     Defendant Cross then arrested Mr. Adams for failure to disperse on command pursuant to N.C. Gen. Stat. § 14-288.5.

87.     Despite continuously engaging in the exact same behavior as Mr. Adams, Law Enforcement did not arrest any of the other fifteen individuals standing in the line with Mr. Adams.

88.     At no point in time did Mr. Adams engage in any violent or threatening behavior.

89.     At no point in time did Mr. Adams utilize verbal threats or words to provoke a breach of the peace.

<u>PLAINTIFFS KATELYN CAMPBELL AND LISA ROWDEN</u>

90.     On November 14, 2019, Plaintiff Katelyn Campbell ("Ms. Campbell") and Plaintiff Lisa Rowden ("Ms. Rowden") separately traveled to Graham, North Carolina, to participate in the Protest. Ms. Campbell and Ms. Rowden arrived at the Center for Spiritual Living and, when the Protest began, marched with the other protestors down the sidewalk of S. Maple Street.

91.     Ms. Campbell and Ms. Rowden participated in the Protest as described in Section B-I of this Complaint.

92.     Ms. Campbell and Ms. Rowden volunteered to be Marshals[3] for the Protest. As

---

[3] A Marshal is an individual designated to keep the protestors safe and orderly.

Marshals, Ms. Campbell and Ms. Rowden were tasked with keeping the protestors safe and orderly during the Protest. In order to identify themselves as Marshals, they wore bright green and orange safety vests.

93. Once the protestors were surrounded by Law Enforcement barriers in front of the Center for Spiritual Living, Ms. Campbell and Ms. Rowden stood on the public sidewalk across from the Center for Spiritual Living and continued to monitor the protestors.

94. While Ms. Campbell and Ms. Rowden were on the public sidewalk, Law Enforcement began to use sound cannons. Ms. Campbell and Ms. Rowden placed their fingers in their ears to block the sound and protect their hearing.

95. While they were standing on the public sidewalk and covering their ears, two officers approached Ms. Campbell and Ms. Rowden: Defendant Mowbray and Defendant Wilson.

96. When the officers approached, Defendant Mowbray asked Ms. Campbell a question to which she replied, "What?" Defendant Mowbray then responded, "Did you just say no to me?"

97. Defendant Mowbray then arrested Ms. Campbell and Defendant Wilson then arrested Ms. Rowden for failure to disperse on command pursuant to N.C. Gen. Stat. § 14-288.5. Both were arrested while standing on the public sidewalk. **Exhibit K.**

98. At no point in time did Ms. Campbell or Ms. Rowden engage in any violent or threatening behavior.

99. At no point in time did Ms. Campbell or Ms. Rowden utilize verbal threats or abusive language to create an imminent threat of violence or to provoke a breach of the peace. Ms. Campbell and Ms. Rowden had no individual interactions with law enforcement prior to their arrest.

100. The two arresting officers then led Ms. Campbell and Ms. Rowden to a fence

located at 306 Maple Street. Defendant Mowbray then called a female officer, Defendant Jane Doe #1, to search Ms. Campbell and Ms. Rowden. **Exhibit L; Exhibit M.**

101.    The search returned nothing illegal and Ms. Campbell and Ms. Rowden were then placed in a law enforcement van.

## PLAINTIFF RUBY SINREICH

102.    On November 14, 2019, Ruby Sinreich ("Ms. Sinreich") traveled to Graham, North Carolina, to participate in the Protest. Ms. Sinreich arrived at the Center for Spiritual Living and, when the Protest began, marched with the other protestors down the sidewalk of S. Maple Street. Ms. Sinreich participated in the Protest as described in Section B-I of this Complaint.

103.    Ms. Sinreich was among the individuals Law Enforcement physically pushed onto the private property of the Center for Spiritual Living after surrounding the protestors.

104.    While Law Enforcement were pushing protestors onto the property of the Center for Spiritual Living, Defendant Ellis pushed Ms. Sinreich in her torso in an attempt to move her back.

105.    After being pushed, Ms. Sinreich yelled "get your hands off my chest" towards Defendant Ellis. Defendant Ellis then responded something to the effect of "alright, that's it."

106.    Defendant Ellis then pulled Ms. Sinreich from the crowd and arrested her for failure to disperse on command pursuant to N.C. Gen. Stat. § 14-288.5.

107.    At no point in time did Ms. Sinreich engage in any violent or threatening behavior.

108.    At no point in time did Ms. Sinreich utilize verbal threats or abusive language to create an imminent threat of violence or to provoke a breach of the peace.

## PLAINTIFF MARK SFEIR

109.    On November 14, 2019, Mark Sfeir ("Mr. Sfeir") traveled to Graham, North

Carolina, to attend the Protest. Mr. Sfeir arrived at the Center for Spiritual Living and, when the Protest began, marched with the other protestors down the sidewalk of S. Maple Street. Mr. Sfeir participated in the Protest as described in Section B-I of this Complaint.

110.    Throughout the Protest, Mr. Sfeir held a large flag depicting a butterfly.

111.    When Law Enforcement began physically pushing protestors onto the private property of the Center for Spiritual Living, Mr. Sfeir relocated to the side of the road, near the shoulder area.

112.    While Mr. Sfeir was standing near the shoulder area of the road, Defendant Payne and Defendant Cross approached him.

113.    Defendant Payne and Defendant Cross then attempted to push Mr. Sfeir onto the Center for Spiritual Living's private property and remove the large flag from his possession.

114.    Defendant Cross applied physical force to Mr. Sfeir's body in an attempt to push him onto private property. Defendant Cross and Defendant Payne then arrested Mr. Sfeir and charged him with failure to disperse on command pursuant to N.C. Gen. Stat. 14-288.5.

115.    At no point in time did Mr. Sfeir engage in any violent or threatening behavior.

116.    At no point in time did Mr. Sfeir utilize verbal threats or abusive language to create an imminent threat of violence or to provoke a breach of the peace.

**C. LAW ENFORCEMENT HAD NO LEGAL BASIS FOR ISSUING A COMMAND TO DISPERSE.**

117.    Plaintiffs were each charged with one count of failing to disperse on command in violation of N.C. Gen. Stat. § 14-288.5.

118.    According to the warrants for arrest, Defendants gave a command to disperse because Law Enforcement reasonably believed that disorderly conduct by three or more persons was occurring. No other charges were brought against Plaintiffs.

19

119. N.C. Gen. Stat. § 14-288.4 defines disorderly conduct as a public disturbance intentionally caused by any person who does any of the following: "(1) Engages in fighting or other violent conduct or in conduct creating the threat of imminent fighting or other violence; or (2) Makes or uses any utterance, gesture, display or abusive language which is intended and plainly likely to provoke violent retaliation and thereby cause a breach of the peace."

120. For the duration of the Protest, protestors engaged in singing, holding hands, and chanting while carrying flags, signs, and other items designed to symbolize their opposition to local law enforcement cooperation with ICE.

121. The Protest was peaceful at all times.

122. At no point during the Protest did three or more protestors engage in fighting or violent conduct or any conduct creating the threat of an imminent fight or violence.

123. At no point during the Protest did three or more protestors make or use any utterance, gesture, display or abusive language likely to provoke violent retaliation or cause a breach of the peace.

124. Defendant Cross's testimony at Mr. Sfeir's criminal trial corroborates that the Protest was peaceful.

125. Defendant Cross testified that he observed no threats of violence or threats to personal property from anyone in the crowd.

126. Defendant Cross also testified that he did not hear anyone engaging in provocation by using fighting words.

## **CLAIMS FOR RELIEF**

### **FIRST CLAIM FOR RELIEF**
### **VIOLATION OF FREE EXPRESSION, FREE ASSOCIATION, AND ASSEMBLY RIGHTS UNDER THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

20

**42 U.S.C. § 1983**
*On Behalf of All Plaintiffs Against All Defendants*

127.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

128.     Plaintiffs assert a claim pursuant to 42 U.S.C. § 1983 for violation of the free expression, free association, and assembly rights protected under the First and Fourteenth Amendments to the U.S. Constitution.

129.     Defendant Johnson's enforcement of Chapter 18, Art. VI, Sections 18-172 and 18-174–181 of the City of Graham's Code of Ordinances constituted an unconstitutional prior restraint on Plaintiffs' First Amendment rights.

130.     Defendants' issuance of a command to disperse was an unlawful order that prohibited Plaintiffs from engaging in First Amendment protected activity.

131.     Defendants' unlawful arrest of Plaintiffs, which resulted from the unlawful order to disperse, prohibited Plaintiffs from continuing to engage in First Amendment protected activity and was unconstitutional.

132.     Defendants were acting under the color of law when they deprived Plaintiffs of their constitutional rights.

**SECOND CLAIM FOR RELIEF**
**UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**42 U.S.C. § 1983**
*On Behalf of Plaintiff Xavier Adams Against Defendant Clint Cross*

133.     The foregoing allegations are repeated and incorporated as though fully set forth herein.

134.     Plaintiff Xavier Adams asserts a claim pursuant to 42 U.S.C. § 1983 for his unlawful arrest in violation of his Fourth Amendment right to be free from unreasonable seizure.

21

135. Defendant Clint Cross unlawfully arrested Plaintiff Xavier Adams for failure to comply with an unlawful order to disperse without probable cause to believe that disorderly conduct had occurred.

136. Defendant Clint Cross's unlawful arrest violated Plaintiff Xavier Adams' right to be free from unreasonable seizure under the Fourth Amendment.

137. Defendant Clint Cross was acting under the color of law when he deprived Plaintiff Xavier Adams of his constitutional rights.

**THIRD CLAIM FOR RELIEF**
**RACE DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT**
**TO THE UNITED STATES CONSTITUTION**
**42 U.S.C. § 1983**
*On Behalf of Plaintiff Xavier Adams Against Defendant Clint Cross*

138. The foregoing allegations are repeated and incorporated as though fully set forth herein.

139. Plaintiff Xavier Adams asserts a claim pursuant to 42 U.S.C. § 1983 for race discrimination in violation of his Fourteenth Amendment right to Equal Protection under the law.

140. Plaintiff Xavier Adams engaged in the same conduct as approximately fifteen similarly situated white protestors.

141. Defendant Clint Cross singled out and arrested Plaintiff Xavier Adams for conduct that similarly situated white protestors standing shoulder to shoulder with Plaintiff Xavier Adams were also engaging in. Those similarly situated white protestors continued to engage in the conduct that was the subject of Plaintiff Xavier Adams' arrest, yet none of those white individuals were arrested.

142. The only distinction between Plaintiff Xavier Adams and the numerous other white individuals engaged in the same conduct and standing shoulder to shoulder on both sides

of him is that Plaintiff Xavier Adams is Afro-Mexican.

143.    Race was a substantial motivating factor in Defendant Clint Cross's decision to arrest Plaintiff Xavier Adams.

144.    Defendant Clint Cross violated Plaintiff Xavier Adams' Fourteenth Amendment right to Equal Protection under the law when he based his decision to arrest Plaintiff Xavier Adams, at least in part, on Plaintiff's race.

145.    Defendant Clint Cross was acting under the color of law when he deprived Plaintiff Xavier Adams of his constitutional rights.

**FOURTH CLAIM FOR RELIEF**
**UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**
**42 U.S.C. § 1983**
***On Behalf of Plaintiff Katelyn Campbell Against Defendant TJ Mowbray***

146.    The foregoing allegations are repeated and incorporated as though fully set forth herein.

147.    Plaintiff Katelyn Campbell asserts a claim pursuant to 42 U.S.C. § 1983 for her unlawful arrest in violation of her Fourth Amendment right to be free from unreasonable seizure.

148.    Defendant TJ Mowbray unlawfully arrested Plaintiff Katelyn Campbell for failure to comply with an unlawful order to disperse without probable cause to believe that disorderly conduct had occurred.

149.    Defendant TJ Mowbray's unlawful arrest violated Plaintiff Katelyn Campbell's right to be free from unreasonable seizure under the Fourth Amendment.

150.    Defendant TJ Mowbray was acting under the color of law when he deprived Plaintiff Katelyn Campbell of her constitutional rights.

**FIFTH CLAIM FOR RELIEF**
**UNLAWFUL SEARCH IN VIOLATION OF THE FOURTH AMENDMENT TO THE**

## UNITED STATES CONSTITUTION
## 42 U.S.C. § 1983
### *On Behalf of Plaintiffs Lisa Rowden and Katelyn Campbell Against Defendant Jane Doe #1*

151.    The foregoing allegations are repeated and incorporated as though fully set forth herein.

152.    Plaintiff Lisa Rowden and Plaintiff Katelyn Campbell assert a claim pursuant to 42 U.S.C. § 1983 for unlawful searches in violation of their Fourth Amendment right to be free from unreasonable searches.

153.    Defendant Jane Doe #1 searched Plaintiff Lisa Rowden and Plaintiff Katelyn Campbell at the time of their unlawful arrest.

154.    In addition to searching their persons, Defendant Jane Doe #1 also searched the personal belongings of Plaintiff Lisa Rowden and Plaintiff Katelyn Campbell.

155.    Defendant Jane Doe #1 conducted the search at the scene of the arrests.

156.    Because Plaintiff Lisa Rowden and Plaintiff Katelyn Campbell were unlawfully arrested, Defendant Jane Doe #1 had no legal basis or probable cause to conduct a search of their persons.

157.    Defendant Jane Doe #1's unlawful search violated Plaintiff Lisa Rowden and Plaintiff Katelyn Campbell's right to be free from unreasonable searches under the Fourth Amendment.

158.    Defendant Jane Doe #1 was acting under the color of law when she deprived Plaintiff Katelyn Campbell and Plaintiff Lisa Rowden of their constitutional rights.

## SIXTH CLAIM FOR RELIEF
## UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## 42 U.S.C. § 1983
### *On Behalf of Plaintiff Lisa Rowden Against Defendant Christian Wilson*

24

159. The foregoing allegations are repeated and incorporated as though fully set forth herein.

160. Plaintiff Lisa Rowden asserts a claim pursuant to 42 U.S.C. § 1983 for her unlawful arrest in violation of her Fourth Amendment right to be free from unreasonable seizure.

161. Defendant Christian Wilson unlawfully arrested Plaintiff Lisa Rowden for failure to comply with an unlawful order to disperse without probable cause to believe that disorderly conduct had occurred.

162. Defendant Christian Wilson's unlawful arrest violated Plaintiff Lisa Rowden's right to be free from unreasonable seizure under the Fourth Amendment.

163. Defendant Christian Wilson was acting under the color of law when he deprived Plaintiff Lisa Rowden of her constitutional rights.

## SEVENTH CLAIM FOR RELIEF
## UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
## 42 U.S.C. § 1983
### *On Behalf of Plaintiff Ruby Sinreich Against Defendant Jeffrey Ellis*

164. The foregoing allegations are repeated and incorporated as though fully set forth herein.

165. Plaintiff Ruby Sinreich asserts a claim pursuant to 42 U.S.C. § 1983 for her unlawful arrest in violation of his Fourth Amendment right to be free from unreasonable seizure.

166. Defendant Jeffrey Ellis unlawfully arrested Plaintiff Ruby Sinreich for failure to comply with an unlawful order to disperse without probable cause to believe that disorderly conduct had occurred.

167. Defendant Jeffrey Ellis's unlawful arrest violated Plaintiff Ruby Sinreich's right to be free from unreasonable seizure under the Fourth Amendment.

168.     Defendant Jeffrey Ellis was acting under the color of law when he deprived

Plaintiff Ruby Sinreich of her constitutional rights.

### EIGHTH CLAIM FOR RELIEF
### UNLAWFUL ARREST IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### 42 U.S.C. § 1983
*On Behalf of Plaintiff Mark Sfeir Against Defendant Clint Cross and Defendant Josh Payne*

169.     The foregoing allegations are repeated and incorporated as though fully set forth

herein.

170.     Plaintiff Mark Sfeir asserts a claim pursuant to 42 U.S.C. § 1983 for his unlawful

arrest in violation of his Fourth Amendment right to be free from unreasonable seizure.

171.     Defendant Clint Cross and Defendant Josh Payne unlawfully arrested Plaintiff

Mark Sfeir for failure to comply with an unlawful order to disperse without probable cause to

believe that disorderly conduct had occurred.

172.     Defendant Clint Cross and Defendant Josh Payne's unlawful arrest violated

Plaintiff Mark Sfeir's right to be free from unreasonable seizure under the Fourth Amendment.

173.     Defendant Clint Cross and Defendant Josh Payne were acting under the color of

law when he deprived Plaintiff Mark Sfeir of his constitutional rights.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

a)  Award Plaintiffs compensatory and punitive damages;

b)  Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988

    and 28 U.S.C. § 1920 and as otherwise permitted by law;

c)  Order such other relief as this Court deems just and equitable.

26

Respectfully submitted this 27th day of October 2022,

*//s// **Jaelyn D. Miller***

Jaelyn D. Miller
K&L Gates LLP
N.C. State Bar No 56804
430 Davis Drive, suite 400
Morrisville, NC 27560
Jaelyn.miller@klgates.com
919-314-5635

C. Scott Holmes
Associate Clinical Professor of Law
N.C. State Bar No. 25569
640 Nelson Street
Durham, NC 27707
scott.holmes@nccu.edu
919-530-7463

Ian A. Mance
EMANCIPATE NC
N.C. State Bar No. 46589
P.O. Box 309
Durham, NC 27702
ian@emancipatenc.org
919-682-1149

*Counsel for Katelyn Campbell, Xavier Adams, Mark Sfeir, Lisa Rowden, and Ruby Sinreich*

27

XAVIER ADAMS, KATELYN CAMPBELL,
LISA ROWDEN, RUBY SINREICH,
MARK SFEIR,

        Plaintiffs,

v.

CITY OF GRAHAM, CLINT CROSS, *in his
individual and official capacity*, TJ
MOWBRAY, *in his individual and official
capacity*, CHRISTIAN WILSON, *in his
individual and official capacity*, JANE DOE #1,
*in her individual and official capacity*,
JEFFREY ELLIS, *in his individual and official
capacity*, JOSH PAYNE, *in his individual and
official capacity*, MARY "KRISTY" COLE, *in
her official capacity*, JEFFREY PRICHARD, *in
his individual and official capacity as the chief
of the Graham Police Department, and* TERRY
S. JOHNSON, *in his official capacity as Sheriff
of Alamance County*,

        Defendants.

**CIVIL ACTION NO.**
**VERIFIED COMPLAINT**

    The undersigned, Lisa Rowden, being first duly sworn, deposes and says that she is a Plaintiff in this action; that as such she has personal knowledge of the events described in the foregoing complaint; that she has read the complaint and the same is true and correct of her own personal knowledge, except as to those allegations made upon information and belief, and as to those allegations, she believes them to be true.

    This the 22ᵗʰ day of September, 2022.

                      Lisa Rowden

**STATE OF NORTH CAROLINA**

Alamance COUNTY

I, Jocelyn Jimenez , a Notary Public of Alamance County, State of North Carolina, do hereby
certify that <u>Lisa Rowden</u> personally appeared before me this day and acknowledged the execution of the
forgoing instrument.
Witness my hand and seal, this 22 day of September 2022.

Notary Public

My Commission Expires:

01/17/2027

```
JOCELYN JIMENEZ
Notary Public - North Carolina
Alamance County
My Commission Expires: January 17, 2027
```

XAVIER ADAMS, KATELYN
CAMPBELL, LISA ROWDEN, RUBY
SINREICH, MARK SFEIR,

      Plaintiffs,

v.

CITY OF GRAHAM, CLINT CROSS, *in his individual and official capacity*, TJ MOWBRAY, *in his individual and official capacity*, CHRISTIAN WILSON, *in his individual and official capacity,* JANE DOE #1, *in her individual and official capacity,* JEFFREY ELLIS, *in his individual and official capacity*, JOSH PAYNE, *in his individual and official capacity*, MARY "KRISTY" COLE, *in her official capacity*, JEFFREY PRICHARD, *in his individual and official capacity as the chief of the Graham Police Department, and* TERRY S. JOHNSON*, in his official capacity as Sheriff of Alamance County,*

      Defendants.

**CIVIL ACTION NO.**
**VERIFIED COMPLAINT**

---

The undersigned, Katelyn Campbell, being first duly sworn, deposes and says that she is a Plaintiff in this action; that as such she has personal knowledge of the events described in the foregoing complaint; that she has read the complaint and the same is true and correct of her own personal knowledge, except as to those allegations made upon information and belief, and as to those allegations, she believes them to be true.

This the 22 day of September, 2022.

                                                            Katelyn Campbell

31

STATE OF NORTH CAROLINA
___Orange___ COUNTY

I, __Linda Hansen__, a Notary Public of ___Orange___ County, State of North Carolina, do hereby certify that <u>Katelyn Campbell</u> personally appeared before me this day and acknowledged the execution of the forgoing instrument.

Witness my hand and seal, this __22nd__ day of __Sept 9/14/2022 9-22-2022 LH__

_Linda Hansen_
Notary Public Linda Hanson

My Commission Expires: 1-3-2026

32

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

XAVIER ADAMS, KATELYN
CAMPBELL, LISA ROWDEN, RUBY
SINREICH, MARK SFEIR,
      Plaintiffs,

v.

CITY OF GRAHAM, CLINT CROSS, *in his
individual and official capacity*, TJ
MOWBRAY, *in his individual and official
capacity*, CHRISTIAN WILSON, *in his
individual and official capacity,* JANE DOE
#1, *in her individual and official capacity,*
JEFFREY ELLIS, *in his individual and
official capacity*, JOSH PAYNE, *in his
individual and official capacity*, MARY
"KRISTY" COLE, *in her official capacity*,
JEFFREY PRICHARD, *in his individual and
official capacity as the chief of the Graham
Police Department, and* TERRY S.
JOHNSON, *in his official capacity as Sheriff
of Alamance County*,
      Defendants.

**CIVIL ACTION NO.**
**VERIFIED COMPLAINT**

---

The undersigned, Xavier Adams, being first duly sworn, deposes and says that he is a Plaintiff in

this action; that as such he has personal knowledge of the events described in the foregoing complaint; that

he has read the complaint and the same is true and correct of his own personal knowledge, except as to

those allegations made upon information and belief, and as to those allegations, he believes them to be true.

This the _26_ day of _09_ 2022.

_____
                   Xavier Adams

29

STATE OF NORTH CAROLINA

~~Orange~~ COUNTY *Socha* *Durham*

I, *Maureen A.* , a Notary Public of ___ County, State of North Carolina, do hereby certify that <u>Xavier Adams</u> personally appeared before me this day and acknowledged the execution of the forgoing instrument.

Witness my hand and seal, this 26th day of Sept, 2022

_____
Notary Public

My Commission Expires:

*October 25, 2025*

```
┌─────────────────────────────────────┐
│        MAUREEN A SOCHA               │
│   Notary Public, North Carolina      │
│         Durham County                │
│     My Commission Expires            │
│        October 25, 2025              │
└─────────────────────────────────────┘
```

30

XAVIER ADAMS, KATELYN CAMPBELL,
LISA ROWDEN, RUBY SINREICH, MARK
SFEIR,

           Plaintiffs,

v.

CITY OF GRAHAM, CLINT CROSS, *in his
individual and official capacity*, TJ
MOWBRAY, *in his individual and official
capacity*, CHRISTIAN WILSON, *in his
individual and official capacity*, JANE DOE
#1, *in her individual and official capacity*,
JEFFREY ELLIS, *in his individual and
official capacity*, JOSH PAYNE, *in his
individual and official capacity*, MARY
"KRISTY" COLE, *in her official capacity*,
JEFFREY PRICHARD, *in his individual and
official capacity as the chief of the Graham
Police Department, and* TERRY S.
JOHNSON, *in his official capacity as Sheriff
of Alamance County*,

           Defendants.

**CIVIL ACTION NO.**

**VERIFIED COMPLAINT**

The undersigned, Ruby Sinreich, being first duly sworn, deposes and says that she is a Plaintiff in this action; that as such she has personal knowledge of the events described in the foregoing complaint; that she has read the complaint and the same is true and correct of her own personal knowledge, except as to those allegations made upon information and belief, and as to those allegations, she believes them to be true.

This the 23 day of 9, 2022.

                                    Ruby Sinreich

35

STATE OF NORTH CAROLINA
Durham _____ COUNTY

I, Becky Williams, a Notary Public of Durham County, State of North Carolina, do hereby certify that <u>Ruby Sinreich</u> personally appeared before me this day and acknowledged the execution of the forgoing instrument.

Witness my hand and seal, this 23 day of September, 2022.

_____
Notary Public

My Commission Expires: 4/28/2025